965 A.2d 167 (2009)
405 N.J. Super. 408
Catherine G. ALEXANDER, Appellant,
v.
BOARD OF REVIEW, Department of Labor, and County of Union, Respondents.
DOCKET NO. A-1592-07T2.
Superior Court of New Jersey, Appellate Division.
Submitted November 13, 2008.
Decided February 27, 2009.
*168 Catherine G. Alexander, appellant, pro se.
Anne Milgram, Attorney General, attorney for respondent Board of Review, Department of Labor and Workforce Development (Lewis A. Scheindlin, Assistant Attorney General, of counsel, Brady Montalbano Connaughton, Deputy Attorney General, on the brief).
Robert E. Barry, County Counsel, County of Union, attorney for respondent County of Union, join in the brief of respondent Board of Review.
Before Judges A.A. RODRÍGUEZ, PAYNE and WAUGH.
The opinion of the court was delivered by
PAYNE, J.A.D.
Catherine Alexander, discharged by Union County from her employment as an environmental engineer, appeals from a final decision by the Board of Review upholding an appeal tribunal's ruling that she was not entitled to extended unemployment benefits during training (ABT) because *169 she had not demonstrated that there was a reduction in work opportunities at her former work site. On appeal, Alexander argues that the regulation relied upon by the Board in denying benefits is worded in a manner that is contrary to the governing statute, and that the regulation should be construed as the statute dictates, so as to award her ABT payments as an eligible individual.
The record discloses that Alexander was employed by Union County as its only environmental engineer from March 17, 2001 until April 20, 2007, when she was discharged. To Alexander's knowledge, her position has not been refilled. After unsuccessfully seeking employment elsewhere and while receiving unemployment compensation, Alexander applied to and was accepted as a student at Rutgers University, commencing in the fall of 2007. Tuition was waived pursuant to the Workforce Development Partnership Act. See N.J.S.A. 18A:64-13.2. Alexander also sought extended unemployment benefits during training pursuant to N.J.S.A. 43:21-60 and -61. However, her application was denied in a Workforce Development Partnership Program Notice of Ineligibility for Additional Benefits During Training that stated: "You were not permanently separated from employment due to a substantial reduction in work opportunities in your job classification at your former worksite." Alexander appealed the ruling, a hearing occurred, and benefits were again denied by an appeal tribunal for the same stated reason. The appeal tribunal's determination was affirmed by the Board of Review,[1] and this appeal followed.
N.J.S.A. 43:21-60 authorizes the payment of ABT benefits to eligible individuals during education and training pursuant to N.J.S.A. 43:21-61. To be deemed eligible, the individual must demonstrate that he or she:
Has received a notice of a permanent termination of employment by the individual's employer or has been laid off and is unlikely to return to his previous employment because work opportunities in the individual's job classification are impaired by a substantial reduction of employment at the worksite.
[N.J.S.A. 43:21-60a (emphasis supplied).]
The implementing regulation, N.J.A.C. 12:23-5.1, provides:
(a) An individual will be eligible for additional unemployment benefits during training only if the individual:
* * *
2. Is permanently separated from employment and is unlikely to return to such employment due to a substantial reduction in work opportunities in the individual's job classification at his or her former worksite.
[Ibid. (emphasis supplied).]
The regulation thus eliminates the phrase "or has been laid off" that preceded "and" in the statute. Reading this language literally, the Board required Alexander, who was permanently terminated from her employment by Union County and had no expectation of re-employment by the County, to also demonstrate a reduction of work opportunities in the relevant job classification at her former workplace.[2]
*170 On appeal, Alexander argues that this demonstration is required only by those who are laid off, so as to exclude from receipt of ABT benefits those persons who lack the need for additional training because they expect to return to their prior employment. The Department contends that Alexander's separation from work was an isolated occurrence, caused by her discharge. It then argues that, because no mass layoffs occurred and "there is no evidence in the record to suggest that Alexander is unlikely to return to the worksite solely because work opportunities in her job classification there `are impaired by a substantial reduction in employment ...'[,]" she was ineligible for ABT payments.
The benefits sought by Alexander were made available by legislation first enacted in 1992, establishing the Workforce Development Partnership Program pursuant to the New Jersey Employment and Workforce Development Act, L. 1992, c. 43, codified at N.J.S.A. 34:15D-1 to -20, and various other statutory provisions and amendments set forth in chapters 44 through 49 of the Laws of 1992. Chapter 45, as codified in N.J.S.A. 18A:64-13.2, authorizes tuition waivers such as that received by Alexander, and Chapter 47, as codified in N.J.S.A. 43:21-60 and -61, authorizes ABT payments. In findings set forth in N.J.S.A. 34:15D-2, the Legislature recognized that:
New Jersey, facing an intensely competitive world economy, must choose whether to compete against countries that have low-paid, unskilled workforces or to compete for the high-productivity jobs that can provide a foundation for an economic leadership position for New Jersey and high living standards for all of its citizens.
If New Jersey is going to take the high-skill, high-productivity, high-wage path, it will need a genuine partnership between business, labor and government to invest in the first-rate training and education for front-line workers needed to stimulate greater worker involvement in promoting innovation, quality control and responsiveness to rapid technological advances in production.
[N.J.S.A. 34:15D-2a and b.]
After discussing private sector efforts to train and educate workers that focused upon those with college degrees, and determining that there has been inadequate emphasis on "training and ongoing education for the broad majority of front-line workers," the Legislature concluded:
It is therefore an appropriate public purpose to sustain the current level of support of training programs for disadvantaged individuals and to establish, with the active participation of New Jersey's business and labor communities, a broader program of expanded high-quality training and education, including needed basic skills education, for currently employed and recently displaced front-line workers, funded by the redirection of a portion of existing payroll taxes.
[N.J.S.A. 34:15D-2h.]
In connection with this program, in chapter 47, now codified at N.J.S.A. 43:21-57 to -65, the Legislature provided for extended unemployment benefits to eligible displaced persons, recognizing that:

*171 It is ... an appropriate public purpose, beneficial to workers and employers and the longterm economic development of New Jersey, to use a limited amount of unemployment compensation funds to provide extended unemployment benefits as needed to enable displaced workers to obtain the high quality training and education required for success in occupations where there are demonstrated longterm shortages of skilled labor.
[N.J.S.A. 43:21-57i.]
In the Assembly's Labor Committee Statement, Assembly, No. 1406, L. 1992, c. 47, the Committee stated that:
The extended benefits provided by the bill are permitted only if an individual:
1. Has been notified of a permanent termination of employment or has been laid off and is unlikely to return to his previous employment; ...
N.J.S.A. 43:21-60a, which we quoted at the beginning of this opinion, was enacted to set forth these eligibility criteria.
Regulations governing the Workforce Development Partnership Program are set forth in N.J.A.C. 12:23-1.1 to -13.3. Subchapter 3 governs individual training grants to qualified displaced[3] or disadvantaged workers,[4] authorized by the Employment and Workforce Development Act in N.J.S.A. 34:15D-6. Although Alexander did not seek such a training grant, we nonetheless find the regulations pertaining to that program to be relevant to the present matter. A regulation regarding eligibility initially provided, in language virtually identical to the language in N.J.S.A. 43:21-60 governing extended ABT payments:
In order to be eligible for an individual training grant under the Workforce Development Partnership Program, an individual must be permanently separated from his or her employment, or laid off and unlikely to return to the previous employment due to a substantial reduction in work opportunities in the individual's job classification at his or her former worksite.
[25 N.J.R. 884(a) at 885; 26 N.J.R. 1512(a) at 1513.]
In contrast, the regulation implementing the eligibility requirements of N.J.S.A. 43:21-60, from the outset, provided in language different from the statute:
(a) An individual will be eligible for additional unemployment benefits during training only if the individual:
* * *
2. Is permanently separated from employment and is unlikely to return to such employment due to a substantial reduction in work opportunities in the individual's job classification at his or her former worksite.
[25 N.J.R. 887(a) at 888; 26 N.J.R. 1515(a) at 1516.]
Interestingly, in 1997, an amendment to N.J.A.C. 12:23-3.1, governing eligibility for receipt of training grants, was proposed to "further redefine eligibility ... by requiring *172 that the applicant be permanently separated and unlikely to return to similar employment and not just to previous employment." 29 N.J.R. 3233(a) at 3226. The proposed regulation provided:
(b) in order to be eligible for an individual training grant under the Workforce Development Partnership Program, an individual must be permanently separated from his or her employment, or laid off and unlikely to return to similar employment due to a substantial reduction in work opportunities in the individual's job classification.
No relevant change to the eligibility requirements of N.J.A.C. 12:23-5.1 was proposed.
A person commenting upon the proposed revision to N.J.A.C. 12:23-3.1(b) complained that the proposed change would make it nearly impossible to qualify for a training grant because "similar employment" would be available to any worker who had been laid off or sought to upgrade their employment skills. The Department responded:
The intention of the Department was to separate those workers in a situation where jobs that are unique and have become obsolete (for example, a machine operator for an old factory whose equipment is now out of date in the industry) from other workers at the same job site who have transferable skills (that is, accountant or clerk). Retraining is not necessary for people who can find similar employment after a job loss.
[29 N.J.R. 4690(a) at 4691.]
The regulation was thereafter adopted as proposed. 29 N.J.R. 4690(a) at 4693.
In light of the foregoing legislative and regulatory history, before we address the interpretive issues presented by this appeal, we must first address the validity, per se, of N.J.A.C. 12:23-5.1. In this connection, the Supreme Court has stated:
we set forth the general principles in reviewing a challenged rule. We start with the premise that we must give great deference to an agency's interpretation and implementation of its rules enforcing the statutes for which it is responsible. In re Distrib. of Liquid Assets, 168 N.J. 1, 10-11 [773 A.2d 6] (2001). Such deference is appropriate because it recognizes that "agencies have the specialized expertise necessary to enact regulations dealing with technical matters and are `particularly well equipped to read ... and to evaluate the factual and technical issues that ... rulemaking would invite.'" New Jersey State League of Municipalities v. Dep't of Cmty. Affairs, 158 N.J. 211, 222 [729 A.2d 21] (1999) (quoting Bergen Pines County Hosp. v. New Jersey Dep't of Human Servs., 96 N.J. 456, 474 [476 A.2d 784] (1984)). Consequently, agency rules are accorded a presumption of validity and reasonableness, ibid., and the challenging party has the burden of proving the rule is at odds with the statute, Bergen Pines County Hosp., supra, 96 N.J. at 477 [476 A.2d 784].
Despite that deference, a rule will be set aside if it is "inconsistent with the statute it purports to interpret." Smith v. Director, Div. of Taxation, 108 N.J. 19, 26 [527 A.2d 843] (1987). That is, the agency "may not under the guise of interpretation ... give the statute any greater effect than its language allows." In re Valley Rd. Sewerage Co., 154 N.J. 224, 242 [712 A.2d 653] (1998) (Garibaldi, J. dissenting) (quoting Kingsley v. Hawthorne Fabrics Inc., 41 N.J. 521, 528 [197 A.2d 673] (1964)). Thus, if the regulation is plainly at odds with the statute, we must set it aside. See New Jersey Tpk. Auth. v. AFSCME, Council *173 73, 150 N.J. 331, 351-52 [696 A.2d 585] (1997).
[In re Freshwater Wetlands Protection Act Rules, 180 N.J. 478, 488-89, 852 A.2d 1083 (2004).]
In our view, N.J.A.C. 12:23-5.1(a)(2) is inconsistent with N.J.S.A. 43:21-60a because it eliminates the statutory phrase "or has been laid off," which is then followed by "and unlikely to return to similar employment due to a substantial reduction in work opportunities in the individual's job classification." The regulation is thus rendered to a degree nonsensical, because it imposes upon the applicant the burden of demonstrating, following "permanent" separation, that the applicant is unlikely to return to the applicant's former job as the result of stated conditions. Alternatively, the regulation impermissibly exempts persons such as Alexander, who are fired but are unable to obtain equivalent employment elsewhere, from receiving ABT payments while undergoing training or education. Because N.J.A.C. 12:23-5.1(a)2 is plainly at odds with N.J.S.A. 43:21-60a, we find it to be invalid. In re Freshwater Wetlands Protection Act Rules, supra, 180 N.J. at 489, 852 A.2d 1083.
In the absence of a governing regulation, we consider Alexander's eligibility for ABT benefits in the light of language of N.J.S.A. 43:21-60. First, we note that paragraphs a, b and d of the statute refer to termination "or" layoff, demonstrating that the Legislature envisioned two separate avenues leading to loss of employment. That interpretation is strengthened by the Legislature's use, in paragraph a, of the word "or" to separate "[h]as received a notice of a permanent termination of employment by the individual's employer" from "has been laid off and is unlikely to return to his previous employment because work opportunities in the individual's job classification are impaired by a substantial reduction of employment at the worksite." Although sometimes used interchangeably with "and," "or" is ordinarily considered to be a disjunctive particle. Atlantic Container, Inc. v. Twp. of Eagleswood Planning Bd., 321 N.J.Super. 261, 270 n. 4, 728 A.2d 849 (App.Div.1999); Beaugard v. Johnson, 281 N.J.Super. 162, 169, 656 A.2d 1282 (App. Div.1995). Such a disjunctive construction of paragraph a is consistent with the remaining paragraphs of the statute.
The Department argues that "because work opportunities in the individual's job classification are impaired by a substantial reduction of employment at the worksite" modifies both termination and layoff. However, longstanding rules of construction provide that such a modifying phrase should be interpreted as referring only to the last antecedent phrase that it can reasonably modify. T.I. McCormack Trucking Co. v. United States, 251 F.Supp. 526, 533 (D.N.J.1966); State in the Interest of S.Z., 177 N.J.Super. 32, 35, 424 A.2d 855 (App.Div.1981). If the modifier is intended to relate to more than the last antecedent, a comma is used to set off the modifier from the entire series. McCormack Trucking, supra, 251 F.Supp. at 533; Gudgeon v. Ocean County, 135 N.J.Super. 13, 17, 342 A.2d 553 (App.Div.1975). Such a comma is absent here.
Moreover, as we have previously observed, the construction that the Department espouses makes no sense, since an employee who has been terminated has no realistic possibility of returning to her former worksite. On the other hand, construing the modifier as modifying only "has been laid off" serves the salutary purpose of preserving ABT benefits only for those laid off employees who are unlikely to be recalled by their former employer.
*174 We thus interpret N.J.S.A. 43:21-60a as requiring only a showing of terminationa condition that Alexander met. Other portions of the statute impose additional conditions upon receipt of ABT benefits that insure that the benefits are directed to the recipients intended by the Legislature in enacting the New Jersey Employment and Workforce Development Act. Because there is no indication in the record that Alexander failed to meet those additional conditions, we hold that ABT benefits must be paid.
N.J.A.C. 12:23-5.1 is invalidated and the denial of ABT benefits to Alexander is reversed.
NOTES
[1] However, in connection with her claim for standard weekly unemployment benefits pursuant to N.J.S.A. 43:21-3, the Board established a maximum benefit amount of $12,584, rather than the $2,584 established by the appeal tribunal. See N.J.S.A. 43:21-3(d).
[2] In Bonilla v. Bd. of Review, 337 N.J.Super. 612, 616, 767 A.2d 1042 (App.Div.2001), we noted that the claimant was ineligible for ABT payments pursuant to N.J.S.A. 43:21-60 because there was no evidence of a "substantial reduction of employment at the worksite." However, Bonilla had left his job for health reasons and thus he could have returned to his former job; he was not fired as was Alexander. Moreover, the discongruence between the statute and the implementing regulation was not raised in that case.
[3] A qualified displaced worker is defined as an unemployed worker who is currently receiving unemployment benefits or has exhausted eligibility for unemployment benefits within the preceding 52 weeks and has met criteria set forth set forth in Title III of the federal Job Training Partnership Act.
[4] A qualified disadvantaged worker is defined as an unemployed worker or one working part-time but actively seeking full-time employment who has been certified by the Department of Human Services as receiving or being eligible for public assistance or as having been recently removed from such assistance because of the level of gross income received.