**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1076-19

M.F., B.U., S.B., C.L.,
J.B., and B.L.,[1]

     Plaintiffs-Respondents,

v.

JONAH (Jews Offering New
Alternatives for Healing f/k/a
Jews Offering New Alternatives
to Homosexuality), ARTHUR
GOLDBERG, ALAN DOWNING,
and ALAN DOWNING LIFE
COACHING, LLC,

     Defendants-Appellants,

ELAINE BERK and JEWISH
INSTITUTE FOR GLOBAL
AWARENESS,

     Appellants.

_____

Argued May 11, 2021 – Decided July 6, 2021

_____

[1] We use initials and titles for plaintiffs and certain individuals to protect their privacy interests.

Before Judges Gilson, Moynihan, and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-5473-12.

Michael P. Laffey argued the cause for appellants (Messina Law Firm, P.C., attorneys; Michael P. Laffey, on the briefs).

Bruce D. Greenberg argued the cause for respondents (Lite DePalma Greenberg, LLC, attorneys); Luke A. Barefoot, Lina Bensman, and Thomas S. Kessler (Cleary Gottlieb Steen & Hamilton) of the New York bar, admitted pro hac vice, attorneys; and Scott D. McCoy (Southern Poverty Law Center) of the Alabama bar, admitted pro hac vice, attorney (Bruce D. Greenberg, on the briefs).

Samuel Colabella argued the cause for amicus curiae coalition of psychologists and psychotherapists (Gruber, Colabella, Liuzza, Thompson & Hiben, attorneys; Mark Gruber and Samuel Colabella, on the brief).

Ronald D. Coleman argued the cause for amicus curiae Family Research Council and New Yorkers for Constitutional Freedoms (Dhillon Law Group, Inc., attorneys; Ronald D. Coleman, on the brief).

PER CURIAM

This appeal arises out of plaintiffs' efforts to enjoin defendants from engaging in or promoting conversion therapy intended to change a person's sexual orientation. Appellants Arthur Goldberg, Elaine Berk, and the Jews Offering New Alternatives for Healing (JONAH) (collectively, defendants)

2

appeal from a June 10, 2019 order enforcing a prior order and settlement agreement under Rule 1:10-3.[2] The trial court found that defendants had violated the court's prior post-trial permanent injunction order and the parties' related settlement agreement. Accordingly, the trial court imposed further injunctive relief and awarded plaintiffs damages and attorneys' fees. Defendants challenge the June 10, 2019 order on numerous grounds. We discern no merit in defendants' arguments and affirm.

I.

In November 2012 plaintiffs filed suit, alleging that defendants had engaged in deceptive and fraudulent practices by referring plaintiffs to conversion therapy, which defendants represented could reduce or eliminate plaintiffs' "same-sex attractions." Plaintiffs asserted that defendants had made false representations about the nature and origin of homosexuality and the effectiveness of conversion therapy services, and they had suffered financial and emotional harm from purchasing and engaging in services offered by or through defendants. Plaintiffs contended that defendants' practices violated the New Jersey Consumer Fraud Act (the CF Act), N.J.S.A. 56:8-1 to -20.

---

[2] Elaine Berk was not originally named as a defendant in the lawsuit brought by plaintiffs. Nevertheless, through a settlement agreement, Berk agreed that she would be subject to restrictions under the order granting injunctive relief.

Following several years of litigation and a trial, a jury found that JONAH and Goldberg had engaged in unconscionable business practices in violation of the CF Act. In December 2015, the parties entered into a confidential settlement agreement (the Settlement Agreement).

Under the Settlement Agreement, the parties consented to submit an order to be entered by the trial court. Accordingly, on December 18, 2015, the trial court entered an order granting permanent injunctive relief and awarding attorneys' fees to plaintiffs (the Injunction Order). The Injunction Order directed, among other things, that JONAH dissolve and defendants immediately cease engaging in or promoting conversion therapy or related commerce "in or directed at New Jersey."

Specifically, the Injunction Order provides, in relevant part:

> 1. JONAH, Inc. shall permanently cease any and all operations . . . ;
>
> 2. JONAH, Inc. shall permanently dissolve as a corporate entity and liquidate all its assets, tangible or intangible, . . . ;
>
> 3. . . . Defendants are permanently enjoined from engaging, whether directly or through referrals, in any therapy, counseling, treatment or activity that has the goal of changing, affecting or influencing sexual orientation, "same sex attraction" or "gender wholeness," or any other equivalent term, whether referred to as "conversion therapy," "reparative

4

therapy," "gender affirming processes" or any other equivalent term ("Conversion Therapy"), or advertising, or promoting Conversion Therapy or Conversion Therapy-related commerce in or directed at New Jersey or New Jersey residents (whether in person or remotely, individually or in groups, including via telephone, Skype, email, online services or any delivery medium that may be introduced in the future, and including the provision of referrals to providers, advertisers, promoters, or advocates of the same) . . . ; [and]

4.    Plaintiffs' counsel is awarded attorneys' fees and expenses in the amount of three million five hundred thousand U.S. dollars ($3,500,000) . . . ;

Under the Settlement Agreement, plaintiffs agreed to accept a substantially reduced fee award and defendants waived their right to appeal the jury verdict or Injunction Order. Defendants also agreed that if they breached the Injunction Order or the Settlement Agreement and failed to cure any breach within thirty days, they would have to pay "Breach Damages."

Among other things, the Settlement Agreement provided Berk was bound by the terms of the Injunction Order; Goldberg and Berk were to resign from all positions they held with conversion therapy-related organizations; and they were not to hold any future positions in organizations engaged in or promoting conversion therapy.

A-1076-19

In March 2018, plaintiffs filed a motion to enforce litigants' rights under Rule 1:10-3, arguing that defendants had violated and continued to violate the Injunction Order and Settlement Agreement. After defendants submitted opposing papers and the trial court heard oral argument, on the record, the court found defendants had breached the Settlement Agreement and Injunction Order by making referrals to conversion therapy providers and receiving referral fees for conversion therapy services.

On May 15, 2018, the court issued an order (1) finding that defendants had breached paragraph three of the Injunction Order and paragraph six of the Settlement Agreement; (2) granting defendants thirty days from the date of oral argument to cure the breaches as permitted under the Settlement Agreement; and (3) allowing plaintiffs to engage in discovery related to the alleged breaches, including whether the Jewish Institute for Global Awareness (JIFGA) was an alter ego or continuation of JONAH.

Approximately a year later, in March 2019, plaintiffs filed a second motion to enforce litigants' rights based on the discovery they had received. In support of their motion, plaintiffs submitted documents showing that JONAH had continued to operate under the new name JIFGA. In addition, plaintiffs submitted documents showing that Goldberg and Berk had continued to refer

6 <span>A-1076-19</span>

individuals to conversion therapists and had received, through JIFGA, referral fees.

The court heard oral argument on plaintiffs' second motion on June 7, 2019. Three days later, on June 10, 2019, the trial court issued an order and a written opinion granting plaintiffs' motions to enforce litigants' rights.

The trial court found that Goldberg and Berk had violated the Injunction Order and Settlement Agreement by establishing JIFGA, which was a successor in interest and continuation of JONAH. The trial court also found that Goldberg and Berk had continued to engage in conversion therapy and had promoted conversion therapy-related commerce. Furthermore, the court found those violations were willful and uncured.

In the June 10, 2019 order, the trial court directed that (1) JIFGA was subject to a permanent injunction, requiring it to permanently cease operations and dissolve as a corporate entity; (2) defendants were to pay plaintiffs the Breach Damages as set forth in the Settlement Agreement; (3) defendants were to disgorge all monies "received in connection with their facilitation of [c]onversion [t]herapy"; and (4) Goldberg and Berk were "permanently enjoined from incorporating or serving as officers, directors or trustees" for any tax-exempt entity incorporated or having operations in New Jersey. The trial

A-1076-19

court also permitted plaintiffs to move for counsel fees and costs in connection with the Rule 1:10-3 motions.

Defendants moved for reconsideration and to stay the June 10, 2019 order pending an appeal. On July 11, 2019, the trial court heard argument on the motions and entered two orders: (1) an order granting, in part, reconsideration and modifying paragraph eight of the June 10, 2019 order to permit Goldberg to remain co-president of Congregation Mount Sinai in Jersey City, president of New Jersey Hebrew Free Loan, and a board member of a condominium association; and (2) an order granting, in part, the stay pending appeal. Meanwhile, plaintiffs filed a motion for attorneys' fees and costs. On September 30, 2019, the court entered an order granting that motion.

Defendants now appeal from the June 10, 2019 order. The Family Research Council, the New Yorkers for Constitutional Freedoms, and "a coalition of psychologists and psychotherapists" filed amicus curiae briefs in support of certain of defendants' positions on appeal.

## II.

Defendants make nine main arguments on this appeal. They contend (1) the trial court erred in finding that they had made referrals for conversion therapy; (2) JIFGA's crowdfunding website did not violate the permanent

8

injunction; (3) the permanent injunction is limited to defendants' conduct in New Jersey; (4) defendants cured any alleged breach relating to the receipt of referral fees by refunding those fees; (5) the trial court erred in finding that Goldberg violated the permanent injunction by participating in a "Journey Into Manhood" weekend; (6) the trial court erred in ordering defendants to pay damages; (7) the trial court improperly barred defendants from holding positions with non-profit organizations; (8) the trial court erred in finding that Berk violated the permanent injunction; and (9) the trial court erred in holding that JIFGA was a continuation of JONAH.

Three amici filed two briefs in support of defendants' positions. The coalition of psychologists and psychotherapists argues that the trial court based its decision on a flawed understanding of therapeutic practices. The Family Research Council and New Yorkers for Constitutional Freedoms argue that (1) the trial court erred in ruling that the CF Act applies to conduct outside of New Jersey; (2) banning advocacy related to conversion therapy is an unconstitutional prior restraint on speech; and (3) the ban on defendants' incorporation of or service with corporations in New Jersey is an unconstitutional restriction on defendants' rights of free association and due process.

A-1076-19

We are not persuaded by any of these arguments. The arguments by defendants and the amici can be consolidated into four issues: (1) whether defendants breached the Injunction Order and Settlement Agreement; (2) whether defendants cured all violations by refunding referral fees; (3) whether the trial court erred in ordering defendants to pay damages; and (4) whether the trial court erred by barring defendants from incorporating or serving in leadership positions with non-profit organizations in New Jersey.

1.    Defendants' Breaches

Defendants do not and cannot challenge the Injunction Order or the Settlement Agreement. Indeed, defendants waived their right to appeal the underlying jury verdict as part of the Settlement Agreement. Instead, defendants appeal from the June 10, 2019 order enforcing the Injunction Order and Settlement Agreement.

Rule 1:10-3 allows litigants to enforce court orders. In re Adoption of N.J.A.C. 5:96 & 5:97, 221 N.J. 1, 17 (2015). "The scope of relief in a motion in aid of litigants' rights is limited to remediation of the violation of a court order." Abbott ex rel. Abbott v. Burke, 206 N.J. 332, 371 (2011). Nevertheless, if a court determines that parties have disobeyed an order, the court has discretion and flexibility in fashioning an appropriate remedy to compel

compliance. In re N.J.A.C. 5:96, 221 N.J. at 17-18; Milne v. Goldenberg, 428 N.J. Super. 184, 198 (App. Div. 2012).

Courts have broad discretion when assisting litigants seeking to enforce orders securing their rights. See In re N.J.A.C. 5:96, 221 N.J. at 17. Accordingly, a court is not required to hold an evidentiary hearing on a Rule 1:10-3 motion unless there are material factual disputes concerning the parties' "compliance with the order or ability to comply." State Dep't of Env't Prot. v. Mazza & Sons, Inc., 406 N.J. Super. 13, 29 (App. Div. 2009). The moving party is not required to establish willful disobedience when seeking to enforce an order. In re N.J.A.C. 5:96, 221 N.J. at 17. Nevertheless, coercive relief is permissible when there is a showing of willful non-compliance. Id. at 18. Furthermore, the court has "discretion [to] make an allowance for counsel fees to be paid by any party to the action to a party accorded relief" in accordance with Rule 1:10-3. Consequently, a fee award is permissible where a party's violation of the court order was willful. Hynes v. Clarke, 297 N.J. Super. 44, 57 (App. Div. 1997).

We review an order enforcing litigants' rights for an abuse of discretion. Wear v. Selective Ins. Co., 455 N.J. Super. 440, 458-59 (App. Div. 2018) (citing Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div. 2011)). Accordingly, we reverse

11

such orders only if they lack a rational explanation, depart from established policies, or rest on an impermissible basis. Id. at 459. An award of counsel fees under Rule 1:10-3 is also reviewed for an abuse of discretion. Ibid. (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001)).

We generally defer to a trial court's factual findings so long as those findings are supported by substantial credible evidence. N. Jersey Media Grp., Inc. v. State, Off. of Governor, 451 N.J. Super. 282, 295-96 (App. Div. 2017) (quoting Zaman v. Felton, 219 N.J. 199, 215 (2014)); P.T. v. M.S., 325 N.J. Super. 193, 219 (App. Div. 1999). We give less deference, however, when no witness testified, and the matter was heard on the papers. N.J. Div. of Child Prot. & Permanency v. J.D., 447 N.J. Super. 337, 350 (App. Div. 2016) (citing N.J. Div. of Youth & Fam. Servs. v. G.M., 198 N.J. 382, 396 (2009)).

The trial court found that defendants had violated the Injunction Order and Settlement Agreement in three main ways: (1) establishing and operating JIFGA; (2) operating a crowdfunding website run by JIFGA; and (3) continuing to make referrals for conversion therapy. The trial court's findings are supported by the record. Moreover, any one of these violations supports the relief granted by the trial court.

12

A.     JIFGA

The trial court found that JIFGA was a successor in interest to and continuation of JONAH. The facts and law support that finding.

Courts consider various factors in determining whether an entity is a successor in interest to and continuation of a predecessor corporation. Those factors include continuity of ownership, management, personnel, physical location, assets, and general business operations. Ramirez v. Amsted Indus., Inc., 86 N.J. 332, 342 (1981); 160 W. Broadway Assocs., LP v. 1 Mem'l Drive, LLC, 466 N.J. Super. 600, 611 (App. Div. 2021) (quoting Woodrick v. Jack J. Burke Real Est., Inc., 306 N.J. Super. 61, 73 (App. Div. 1997)); Arevalo v. Saginaw Mach. Sys., 344 N.J. Super. 490, 503-04 (App. Div. 2001). The court can also consider whether the new entity effectively holds itself out as a successor in interest to the prior entity. Marshak v. Treadwell, 595 F.3d 478, 490 (3d Cir. 2009) (citation omitted). It is not necessary to establish all these factors; rather, the critical issue is whether the factors demonstrate that the new entity was intended to carry on the operations of the old entity. Woodrick, 306 N.J. Super. at 74 (citations omitted).

The trial court found that JIFGA and JONAH had the same cofounders and codirectors – Goldberg and Berk; JIFGA was reachable at the same phone

13

number and email addresses as JONAH; and JIFGA continued JONAH's primary purpose of promoting conversion therapy through referrals to therapists. Moreover, while not cited in the trial court's June 10, 2019 written decision, the record demonstrates JIFGA and JONAH occupied the same office space. Those findings are supported by the record.

### B. JIFGA's Crowdfunding Website

The trial court found that the crowdfunding website run by JIFGA violated the Injunction Order because it raised money for projects promoting conversion therapy and JIFGA retained four percent of the money collected for those projects. The record establishes that the programs promoted on the crowdfunding website included a video series on "reparative therapy," that is, conversion therapy, and that the video series was for sale. Those undisputed facts establish that JIFGA's crowdfunding website was promoting conversion therapy-related commerce in or directed at New Jersey or New Jersey's residents.

Defendants argue that the crowdfunding website did not violate the Injunction Order or Settlement Agreement because it was used by third parties to raise funds. That argument ignores the undisputed fact that JIFGA retained four percent of all the funds raised.

14

Defendants and amici also contend that "the trial court's ban on advocacy relating to so-called 'conversion therapy' is an unconstitutional form of prior restraint of speech." We disagree. The restrictions imposed in the Injunction Order and Settlement Agreement were an outgrowth of the jury verdict finding that defendants had violated the CF Act by engaging in unconscionable commercial practices, specifically, through the promotion and provision of conversion therapy.[3] Accordingly, defendants, including Berk, settled that case by agreeing to the limitations placed on them in the Injunction Order and Settlement Agreement. Such litigation-based restrictions do not violate First Amendment rights. See LaManna v. Proformance Ins. Co., 184 N.J. 214, 224 (2005) (recognizing parties may waive constitutionally guaranteed rights by agreement); Midland Funding, L.L.C. v. Giambanco, 422 N.J. Super. 301, 310 (App. Div. 2011).

Furthermore, no constitutional argument was raised before the trial court. Consequently, we decline to address these new arguments on appeal. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). Moreover, to the extent that

---

[3] We note that in 2020, the Legislature enacted N.J.S.A. 45:1-54 to -55, which outlawed the provision of conversion therapy to individuals under the age of eighteen. In doing so, the Legislature aptly stated our State's well-reasoned public policy: that "[b]eing lesbian, gay, or bisexual is not a disease, disorder, illness, deficiency, or shortcoming." N.J.S.A. 45:1-54(a).

amici's arguments go beyond those made by defendants, we disregard those arguments. Bethlehem Twp. Bd. of Educ. v. Bethlehem Twp. Educ. Ass'n, 91 N.J. 38, 48-49 (1982).

C.    The Continued Referrals for Conversion Therapy

The trial court found that Goldberg and Berk violated the Injunction Order and Settlement Agreement by continuing to refer people to conversion therapy. The record supports that finding. From late December 2015 to late May 2018, there were numerous email exchanges in which Goldberg, and to a lesser extent Berk, communicated with people seeking conversion therapy and therapists providing conversion therapy. They also followed up to ensure that they received referral fees.

For example, in an email dated December 31, 2015, Berk informed a therapist who provided conversion therapy services that she and Goldberg were "no longer allowed to legally offer any advice or suggestions to individuals concerning reparative therapy" but they "[were] currently starting a new organization which we will announce soon." Thereafter in March 2016, Goldberg and Berk announced the formation of JIFGA, which promoted, among other things, "morality in sexual relations."

16

In an email dated March 19, 2016, Goldberg directed a recipient of conversion therapy to JIFGA's website. In an email dated August 3, 2017, Goldberg gave the contact information of three therapists who provided conversion therapy services and encouraged the email recipient to "check our new websites," including the crowdfunding website. Berk was copied on that email. In an email dated January 29, 2018, Goldberg introduced himself to a conversion therapy provider, stating that "[a]fter the demise of JONAH, I created the Jewish Institute for Global Awareness (www.jifga.org) as well as a crowd-funding project, www.fundingmorality.com to assist those who are involved in Biblically correct activities."

Defendants argue that the record is ambiguous and, in some cases, contested regarding whether they referred individuals for conversion therapy, as opposed to other types of therapy. In addition, defendants contend that their referrals did not violate the Injunction Order or Settlement Agreement because the referrals were made to individuals outside of New Jersey to therapists outside of New Jersey.

Amici amplify those arguments. The coalition of psychologists and psychotherapists contends that the court erred by assuming that defendants' referrals were for conversion therapy, arguing that therapists treat individuals

17

for a variety of issues. The Family Research Council and New Yorkers for Constitutional Freedoms argue that the court erred in finding that the CF Act applies to conduct outside the State of New Jersey. The facts established by the record refute all these arguments.

The record is clear and undisputed that many of defendants' referrals for conversion therapy were made from New Jersey. For example, an individual sent an email to the JONAH website on January 5, 2016, asking for help "to take the homosexuality out of my life." Goldberg responded using his JONAH email address, asking where the individual was from, and asking to speak with the individual by phone. Similarly, in an email exchange on May 4, 2016, an individual asked Goldberg for the name of a female therapist to treat a "girl with active [same-sex attraction]." Using his JONAH email address, Goldberg responded with the name and contact information of a counselor who "deal[t] with such issues." These emails, and others like them, were all sent from the JONAH website set up and operated in New Jersey.

Moreover, we note that the trial judge had extensive experience with defendants because he had presided over a multi-year litigation, a three-week trial, and multiple post-verdict motions. The trial judge was, therefore, amply

A-1076-19

qualified to draw inferences from the evidence and to make factual findings based on his knowledge of the issues and the parties.

We also reject defendants' and the amici's geographic argument concerning the CF Act. As already noted, defendants waived their right to appeal the jury verdict. In doing so, they also waived their right to argue that their unconscionable business practices should be restricted only in New Jersey.

Nevertheless, even if we were to consider this geographic issue, we would reject it on two independent grounds. First, the Injunction Order does not have a geographic limitation on the prohibition against defendants engaging in referrals for conversion therapy. The language in the Injunction Order was negotiated and agreed to by defendants and their counsel. The Injunction Order states, in relevant part: "Defendants are permanently enjoined from engaging, whether directly or through referrals, in . . . ('Conversion Therapy'), or advertising, or promoting Conversion Therapy or Conversion Therapy-related commerce in or directed at New Jersey or New Jersey residents."

The qualifying phrase "in or directed at New Jersey or New Jersey residents" refers only to the last antecedent and does not modify the phrase concerning the injunction on referrals. This interpretation is consistent with the last antecedent rule, "a principle of statutory construction that holds that, unless

 A-1076-19

a contrary intention otherwise appears, a qualifying phrase within a statute refers to the last antecedent phrase." State v. Gelman, 195 N.J. 475, 484 (2008); see also Alexander v. Bd. of Rev., 405 N.J. Super. 408, 417 (App. Div. 2009).

Second, the undisputed facts in the record establish a clear connection between defendants' activities and New Jersey. Actions pursued under the CF Act require some nexus with New Jersey, through either the perpetrator or the victim of the alleged fraud, or the location of the transaction. Real v. Radir Wheels, Inc., 198 N.J. 511, 514, 527 (2009) (holding CF Act applied to internet transaction between New Jersey seller and out-of-state purchaser); Smith v. Alza Corp., 400 N.J. Super. 529, 551-52 (App. Div. 2008) (finding CF Act applicable in action between New Jersey packager and Alabama plaintiff because "New Jersey [was] the site of the alleged deceptive practice").

The record establishes that Goldberg and Berk principally operated out of New Jersey. For example, the two entities that they set up – JONAH and JIFGA – were both located and operated in New Jersey. Moreover, the record contains multiple examples of Goldberg and Berk engaging in communications while they were in New Jersey. Accordingly, the broad reach of the CF Act was not exceeded. See Real, 198 N.J. at 522 (noting that the CF Act has an "intentionally broad" reach, but "is not without boundaries").

2. Defendants Did Not Cure All Violations by Refunding Some Referral Fees

The Settlement Agreement allows defendants thirty days to cure any breach. When plaintiffs filed their first motion to enforce litigants' rights, the trial court found violations but gave defendants an opportunity to cure. Defendants then refunded some referral fees.

After conducting discovery, plaintiffs filed their second motion to enforce litigants' rights. Defendants argued that they had cured the violations by refunding referral fees. The trial judge rejected that argument. The record amply supports the trial judge's factual findings that the refunds were not complete, and that defendants did not cure all the violations.

By establishing JIFGA and its crowdfunding website, Goldberg and Berk violated the Injunction Order and the Settlement Agreement. Moreover, Goldberg and Berk continued to refer individuals for conversion therapy and the refund of some of the referral fees did not cure those breaches. Finally, even though some fees were refunded, the record supports the trial court's conclusion that not all referral fees were refunded.

A-1076-19

3.   The Trial Court Did Not Err in Ordering Defendants to Pay Damages

In the Settlement Agreement, defendants acknowledged that plaintiffs were entitled to $3,500,000 in attorneys' fees and costs. The parties then agreed that plaintiffs would accept $400,000, but if defendants breached the Settlement Agreement or Injunction Order, defendants would have to pay the remaining fee award. In addition, Berk agreed that if she breached, she would pay plaintiffs $400,000. Those damages were defined in the Settlement Agreement as "Breach Damages" and "Berk Breach Damages."

After finding that Goldberg and Berk both willfully violated the Injunction Order and Settlement Agreement, the trial court awarded plaintiffs the "Breach Damages" and the "Berk Breach Damages." We discern no error in that ruling.

Defendants argue that the award is excessive since it is in the millions of dollars. The short and complete answer to that contention is that defendants agreed that those would be the damages if they breached the Injunction Order or Settlement Agreement. Moreover, defendants agreed that plaintiffs were entitled to $3,500,000 in costs and fees based on the jury verdict.

In addition, the trial court had the authority to enforce the terms of the Settlement Agreement in the context of plaintiffs' Rule 1:10-3 motion because

the Settlement Agreement was expressly intertwined with the court's Injunction Order. See Wasserman's Inc. v. Twp. of Middletown, 137 N.J. 238, 252-53 (1994) (citation omitted) (explaining stipulated damages clauses are presumptively reasonable and enforceable). In that regard, the facts here are distinguishable from our holding in Haynoski v. Haynoski, 264 N.J. Super. 408, 414 (App. Div. 1993). Haynoski involved a private settlement agreement not incorporated into a court order or judgment before the aggrieved party brought a Rule 1:10 application. Ibid. In contrast, the Injunction Order here resulted from the jury verdict in favor of plaintiffs and the Settlement Agreement. The Settlement Agreement expressed the parties' consent to the entry of the Injunctive Order; thus our decision in Haynoski, which disallowed counsel fees on a motion to enforce an unincorporated settlement agreement, is inapplicable. Ibid.

In addition to the Breach Damages, the trial court also properly awarded plaintiffs attorneys' fees and costs in connection with the Rule 1:10-3 motions. Rule 1:10-3 expressly authorizes the trial court to make a fee award. Moreover, where a party's violation of the order is willful, a fee award is also permissible. Hynes, 297 N.J. Super. at 57; In re N.J.A.C. 5:96, 221 N.J. at 18 (allowing sanctions when a party willfully failed to comply with a court order).

23

4. The Ban on Incorporating or Leading Non-Profits

The trial court barred Goldberg and Berk "from incorporating or serving as officers, directors or trustees . . . of any tax-exempt entity incorporated in or having any operations in New Jersey." Defendants argue that the court erred because the additional prohibition is not limited to organizations that are connected to conversion therapy and it violates their constitutional rights to free association. Amici also contend that the bars are unconstitutionally restrictive.

In its opinion on plaintiffs' second motion, the trial court reviewed the record and found that defendants breached the permanent injunction through their incorporation and operation of JIFGA. As a partial remedy for that breach, the court enjoined Goldberg and Berk from serving as directors or officers of any tax-exempt entity incorporated in New Jersey. After defendants moved for reconsideration, the court modified the limitation and allowed Goldberg to continue to serve as a president and board member of three specific organizations.

We reject defendants' and amici's arguments that the limitations are not directly related to Goldberg and Berk's prior breaches of the Injunction Order and Settlement Agreement. To the contrary, the trial court designed that restriction to prevent Goldberg and Berk from further violating the Injunction

Order and Settlement Agreement. That ruling is consistent with the CF Act, which expressly allows injunctive relief. N.J.S.A. 56:8-8. Accordingly, we discern no abuse of discretion, nor do we find that the court exceeded its authority under Rule 1:10-3.

Furthermore, as already noted, the constitutional arguments were not raised before the trial court, and we therefore decline to address them for the first time on appeal. Nieder, 62 N.J. at 234.

In summary, we affirm the trial court's June 10, 2019 order. To the extent that we have not expressly addressed certain arguments raised by defendants and amici, we deem them to be of insufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1076-19